SOLOWY v OAKWOOD HOSPITAL CORPORATION

Docket No. 102964. Argued December 11, 1996 (Calendar No. 7). Decided April 29, 1997.

Lucille Solowy brought a medical malpractice action in the Wayne Circuit Court against Oakwood Hospital Corporation and Drs. Thomas and Johanna Chapel, alleging that representations by the doctors to her that a cancerous lesion likely would not recur and their failure to advise follow-up consultations subsequently caused her to delay seeking treatment when another lesion appeared, resulting in more radical and disfiguring surgery to remove the lesion than would have been required had she sought earlier treatment. The court, Paul S. Teranes, J., granted summary disposition for the defendants, finding that under *Moll v Abbott Laboratories*, 444 Mich 1 (1993), the claim was barred by the statute of limitations. The Court of Appeals, FITZGERALD, P.J., and HOOD and SULLIVAN, JJ., affirmed in an unpublished order (Docket No. 171123). The plaintiff appeals.

In an opinion by Chief Justice MALLETT, joined by Justices BRICKLEY, CAVANAGH, BOYLE, RILEY, and WEAVER, the Supreme Court *held*:

The six-month discovery rule period begins to run in medical malpractice actions when the plaintiff, on the basis of objective facts, is aware of a possible cause of action, i.e., of an injury and a possible causal link between the injury and an act or omission of the physician.

1. A medical malpractice action must be brought within two years of when the claim accrued, or within six months of when the claim was discovered or should have been discovered. The discovery rule period begins to run when, on the basis of objective facts, the plaintiff should have known of a possible cause of action. Once the plaintiff is aware of an injury and its possible cause, the plaintiff is equipped with the necessary knowledge to preserve and diligently pursue a claim. It is not necessary to prove each element of the cause of action or to be aware of the full extent of injury before the period of limitation begins to run. In this case, the suit was filed more than six months after the plaintiff should have discovered a possible cause of action. The plaintiff, while lacking spe-

cific proofs, had the requisite knowledge to diligently pursue her claim.

2. A delay in diagnosis may delay the running of the six-month discovery period in some cases. Courts should apply a flexible approach by considering the totality of information available to the plaintiff, the plaintiff's familiarity with the condition through past experience or otherwise, and a physician's explanations. In this case, even before the diagnosis was confirmed, the plaintiff was aware that her symptoms were identical to those she had experienced five years earlier. That, coupled with her doctor's explanation, supplied her with sufficient information to satisfy the standard.

3. In the absence of disputed facts, whether a cause of action is barred by the statute of limitations and when the plaintiff should have discovered the claim are questions of law. In this case, because the facts before the trial court relevant to the resolution of the discovery rule issue were undisputed, no factual issues remained for the jury to decide. Further, the plaintiff bore the burden of coming forward with evidence to show a disputed issue of material fact. She failed to meet this burden.

Affirmed.

Justice KELLY took no part in the decision of this case.

*Rifkin & Rifkin, P.C.* (by *B. Andrew Rifkin*), for the plaintiff.

*Kitch, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman*), and *Kerr, Russell & Weber, P.L.C.* (by *Stephen D. McGraw* and *Joanne Geha Swanson*), for the defendants.

MALLETT, C.J. We granted leave to appeal to determine whether the plaintiff's claim is barred under the six-month discovery rule applicable to her medical malpractice suit. MCL 600.5838a(2); MSA 27A.5838(1)(2). Specifically, we must decide whether the six-month discovery rule period began to run when plaintiff learned of two possible causes for her lesion, one potentially actionable and one not, or whether it began to run only after her physician con-

firmed the potentially actionable diagnosis. Plaintiff filed her suit more than six months after learning that one of the two possible diagnoses was potentially actionable, but less than six months after her physician confirmed the potentially actionable diagnosis. While we caution that there may be circumstances where the six-month period will not begin to run until a more definitive diagnosis is obtained, we conclude in the present case that the period began to run when the plaintiff learned that one of two possible diagnoses for her lesion was potentially actionable because it was at this point that she should have discovered a possible cause of action. *Moll v Abbott Laboratories*, 444 Mich 1; 506 NW2d 816 (1993); *Gebhardt v O'Rourke*, 444 Mich 535; 510 NW2d 900 (1994). We further conclude that when the plaintiff should have discovered her claim is a question of law for resolution on summary disposition because the facts relevant to determining the issue were undisputed. Consequently, we affirm the Court of Appeals decision that plaintiff's suit is barred.

I

FACTS

On September 14, 1986, plaintiff Solowy visited a clinic owned by defendant Oakwood Hospital for diagnosis and treatment of a lesion on her left outer ear. Defendant Thomas Chapel, M.D., examined and removed the lesion and, after obtaining biopsy results, confirmed the diagnosis as basal cell carcinoma. The plaintiff continued treatment with him or with codefendant Johanna Chapel, M.D., his wife and colleague, until her last visit on October 9, 1986. According to the plaintiff, Dr. Thomas Chapel assured

her during the course of her treatment that the cancer was "gone" and that there was no chance of it recurring. She also claims that the defendant doctors failed to advise that she should return for further follow-up or treatment.

In January 1992, about five years after her last treatment with the defendant doctors, the plaintiff discovered a similar lesion on her left ear at approximately the same site. She described her symptoms as being nearly identical to those she experienced five years earlier, explaining in her deposition that she felt that "it started all over again." On March 27, 1992, approximately two months after first discovering the new lesion, the plaintiff consulted a dermatologist, Dr. Katherin Laing. At this initial visit, Dr. Laing advised her that there were two possible diagnoses for the lesion, either the basal cell carcinoma had recurred, or it was noncancerous seborrheic keratosis.[1] Dr. Laing took a tissue sample and ordered a biopsy. On April 9, 1992, Dr. Laing informed the plaintiff that the lesion was indeed a recurrence of cancer. On July 14, 1992, the plaintiff underwent surgery to remove the cancer. Because the cancer had invaded deeper tissues, the surgeon had to remove the entire top portion of the plaintiff's left outer ear in order to remove all the cancer.

On October 5, 1992, the plaintiff filed this medical malpractice lawsuit, alleging that the defendant doctors' representations to her that her cancer would not recur caused her to delay seeking treatment, resulting

[1] Seborrheic keratosis is a "benign, noninvasive tumor of epidermal origin." *Dorland's Illustrated Medical Dictionary* (26th ed), p 697. Mrs. Solowy suffered from this condition on other areas of her body when she went to see Dr. Laing on March 27, 1992.

in a more radical and disfiguring surgery than would have been required if she had sought treatment earlier. Defendants moved for summary disposition on the ground that the claim was barred by the statute of limitations, having been filed more than two years after the date of last treatment and more than six months after the plaintiff discovered or should have discovered her claim. The trial court granted summary disposition for the defendants, concluding that pursuant to this Court's decision in *Moll*, the latest that the plaintiff should have discovered a possible cause of action was March 27, 1992, when Dr. Laing told her that the lesion could be a recurrence of cancer. Because plaintiff filed more than six months after that date, the suit was barred.

Plaintiff appealed, arguing that the six-month discovery period did not begin to run until April 9, 1992, when Dr. Laing confirmed and informed her of the diagnosis. She argued that, because she filed her suit within six months of the date that Dr. Laing confirmed her diagnosis, the suit was timely. The Court of Appeals affirmed the grant of summary disposition:

> As more than two years had expired since the last day of treatment by defendants, plaintiff had six months from the time she discovered a "possible" cause of action in which to file this lawsuit. *Gebhardt v O'Rourke*, 444 Mich 535, 544 (1994). On the basis of objective facts, plaintiff should have known of an injury on the first day she visited her dermatologist; that the suspicions engendered at that time were later confirmed does not affect the commencement of the six-month discovery period which earlier occurred. *Moll v Abbott Laboratories*, 444 Mich 1, 18 (1993). Plaintiff therefore had until not later than September 27, 1992, to file her cause of action; [because] this cause of action commenced on October 5, 1992, [it] was untimely and summary disposi-

tion was properly granted. [Unpublished order of the Court of Appeals, entered April 20, 1995 (Docket No. 171123).]

Plaintiff now appeals in this Court. She argues that (1) the "possible cause of action" standard relied on by the Court of Appeals should not apply in medical malpractice cases, (2) the lower courts misapplied the standard to her case, holding her to a higher standard than that applicable to her own treating physician because not even her physician could have known of a possible cause of action until after the biopsy confirmed the diagnosis, and (3) because the parties disputed facts concerning when she should have discovered a cause of action, summary disposition was not proper.

Before examining plaintiff's arguments, we will review the limitation provisions controlling in this case.

II

RELEVANT STATUTE OF LIMITATIONS

In general, a plaintiff in a medical malpractice case must bring his claim within two years of when the claim accrued, or within six months of when he discovered or should have discovered his claim. MCL 600.5805(4); MSA 27A.5805(4) and MCL 600.5838; MSA 27A.5838.

The general limitation period for malpractice actions provides that a plaintiff must bring his action within two years of when the claim first accrues. MCL 600.5805(1), (4); MSA 27A.5805(1), (4). For acts of malpractice occurring before October 1, 1986, the claim accrues on the date that the defendant "discontinue[d] treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to

the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838(1); MSA 27A.5838(1).

On October 1, 1986, an accrual provision specific to medical malpractice claims became effective. This provision states that medical malpractice claims accrue "at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838a(1); MSA 27A.5838(1)(1). Thus, for acts or omissions giving rise to a claim of malpractice occurring before October 1, 1986, the claim accrues for purposes of the two-year limitation period on the last date of professional services. For acts or omissions giving rise to a claim of malpractice occurring after October 1, 1986, the claim accrues on the date of the alleged act or omission giving rise to the claim.

In this case, Drs. Chapel treated the plaintiff both before and after October 1, 1986, with the last date of treatment having occurred on October 9, 1986. Regardless of whether the allegedly negligent acts or omissions occurred before or after October 1, 1986, plaintiff's suit would be barred under the relevant two-year provision. The latest possible accrual date is October 9, 1986, the last date that defendants rendered professional services. In order to have timely commenced this action within the two-year period, plaintiff would have had to file her suit on or before October 9, 1988. Because the complaint was not filed until nearly four years later, on October 5, 1992, the claim is barred unless plaintiff can prove that she

filed her claim within six months of when she discovered or should have discovered her claim.

The six-month discovery rule applicable to this claim provides:

> Except as otherwise provided in this subsection, an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in section 5805 or sections 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim,. whichever is later. [MCL 600.5838a(2); MSA 27A.5838(1)(2).][2]

Applying this subsection, the Court of Appeals determined that the suit was barred because it was filed more than six months after the plaintiff should have discovered a "possible cause of action," as required by this Court's opinions in *Moll* and *Gebhardt.*

### III

#### POSSIBLE CAUSE OF ACTION STANDARD

#### A

The plaintiff argues that the "possible cause of action" standard announced in *Moll* and applied in *Gebhardt* should not apply in the medical malpractice context. We disagree.

This Court adopted the "possible cause of action" standard for determining when the discovery rule period begins to run in *Moll.* The majority concluded that an objective standard applied in determining when a plaintiff should have discovered a claim. Fur-

---

[2] The cited provision reflects the 1986 amendments. However, the language concerning the discovery rule is in all significant respects unchanged. See n 3.

ther, the plaintiff need not know for certain that he had a claim, or even know of a likely claim before the six-month period would begin. Rather, the discovery rule period begins to run when, on the basis of objective facts, the plaintiff should have known of a possible cause of action. The majority explained:

> We find that the best balance is struck in the use of the "possible cause of action" standard. This standard advances the Court's concern regarding preservation of a plaintiff's claim when the plaintiff is unaware of an injury or its cause, yet the standard also promotes the Legislature's concern for finality and encouraging a plaintiff to diligently pursue a cause of action. *Once a claimant is aware of an injury and its possible cause, the plaintiff is aware of a possible cause of action.* We see no need to further protect the rights of the plaintiff to pursue a claim, because the plaintiff at this point is equipped with sufficient information to protect the claim. This puts the plaintiff, whose situation at one time warranted the safe harbor of the discovery rule, on equal footing with other tort victims whose situation did not require the discovery rule's protection. [*Moll* at 23-24 (emphasis added).]

While *Moll* involved pharmaceutical products liability claims, the majority's analysis is not specific to those types of claims. Quite the opposite, the analysis supports applying the standard in the context of other types of tort suits that are subject to the discovery rule.

This Court's opinion in *Gebhardt* bears this out. In that case, we applied *Moll*'s "possible cause of action" standard to the statutory six-month discovery rule applicable to legal malpractice claims. MCL 600.5838; MSA 27A.5838, as amended by 1986 PA 178.[3] The

---

[3] The discovery rule language applied in *Gebhardt* provided:

rationale of *Moll* applies equally to malpractice actions, whether legal or medical. Once a plaintiff is aware of an injury and its possible cause, the plaintiff is equipped with the necessary knowledge to preserve and diligently pursue his claim.

B

Application of the "possible cause of action" standard to the facts of Mrs. Solowy's medical malpractice suit supports the Court of Appeals conclusion that her suit is barred. Before applying this standard to the facts of the present case, we must set forth general principles that apply to the discovery rule.

In *Moll* at 18, we succinctly set forth some of these principles:

> Michigan jurisprudence compels not only the use of an objective standard for determining when an injury is discovered, but it also compels strict adherence to the general rule that "subsequent damages do not give rise to a new cause of action." . . . The discovery rule applies to discov-

---

Except as otherwise provided . . . an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed . . . or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. [MCL 600.5838(2); MSA 27A.5838(2).]

This provision applied to all malpractice claims before the 1986 tort reform amendments. For claims arising after October 1, 1986, the 1986 amendments changed the limitation provisions applicable to medical malpractice suits in several respects. The language concerning discovery, however, remained unchanged, i.e., under the new discovery rule provision, MCL 600.5838a(2); MSA 27A.5838(1)(2), a claim may be filed "within 6 months after the plaintiff discovers or should have discovered the existence of the claim . . . ."

As explained in part II, Drs. Chapel treated the plaintiff both before and after October 1, 1986. While neither the record nor the parties provide a clear answer to whether the 1986 amendments apply, because the discovery rule language is nearly identical, that determination is not necessary to our analysis.

ery of an injury, not to the discovery of a later realized consequence of the injury.

Further, the plaintiff need not be able to prove each element of the cause of action before the statute of limitations begins to run. *Moll* at 21; *Warren Consolidated Schools v W R Grace & Co*, 205 Mich App 580, 583; 518 NW2d 508 (1994), citing *Detroit Bd of Ed v Celotex Corp (On Remand)*, 196 Mich App 694, 706; 493 NW2d 513 (1992).

Mrs. Solowy was aware of a possible cause of action no later than March 27, 1992, the date of her first visit with Dr. Laing. At this visit, Dr. Laing informed her that the lesion on her ear was either a recurrence of the cancer or seborrheic keratosis. She was also aware at this point that her symptoms were identical to those she had experienced five years earlier. The plaintiff's pleadings and deposition testimony allege that had Drs. Chapel told her that the cancer could recur and that follow-up visits would be necessary, she would have sought treatment earlier and consequently, she would not have suffered the degree of injury that she did. Therefore, as of March 27, the plaintiff knew of an injury, i.e., the progression of the lesion on her ear, and its possible cause, i.e., the failure of Drs. Chapel to inform her that the cancer could recur and that she should seek follow-up treatment.

The "possible cause of action" standard does not require that the plaintiff know that the injury to her ear, in the form of the advancement of the disease process, was in fact or even likely caused by the defendant doctors' alleged omissions. Neither does the standard require that the plaintiff be aware of the full extent of her injury before the clock begins to run. Consequently, it is irrelevant that the plaintiff

was not yet aware that the progression of cancer would eventually necessitate removal of the upper portion of her left outer ear.

In summary, after the March 27 visit, the plaintiff, while lacking specific proofs, was armed with the requisite knowledge to diligently pursue her claim.

## IV

### DELAYED DIAGNOSIS

The plaintiff alternatively argues that the lower courts incorrectly applied the "possible cause of action" standard to her case. She argues that by barring her suit, the lower courts held her to a higher standard than her own treating physician, because not even Dr. Laing could have known of a possible cause of action until she confirmed that the lesion was basal cell carcinoma.

The plaintiff's argument is unconvincing. As explained earlier in part III(B), once the plaintiff and her physician were aware that the lesion could be a recurrence of cancer, the possible cause of action standard was met. Had Dr. Laing at the first visit also known what Mrs. Solowy knew, i.e., that she had delayed treatment in reliance on the defendant doctors' alleged failure to warn her of the possibility of recurrence, she too would have known of a possible cause of action as of this date. Consequently, the courts did not hold Mrs. Solowy to a higher standard than her own physician.

We recognize that Mrs. Solowy's situation is sympathetic because she proceeded with some diligence in filing her claim. Although she did not sit on her rights for long, she unfortunately sat on them long enough to miss the statute of limitations cut off by approxi-

mately eight days. This type of case illustrates the apparent arbitrariness of statutes of limitations. This arbitrariness, however, is unavoidable and is the essential nature of any statute of limitations. While we are sympathetic to those who miss the deadline by a few days, their claims are nevertheless barred.

We caution, however, that a delay in diagnosis may delay the running of the six-month discovery period in some cases. Some illnesses and injuries may defy even a possible diagnosis until a test, or a battery of tests, can limit the possibilities. In such a case, it would be unfair to deem the plaintiff aware of a possible cause of action before he could reasonably suspect a causal connection to the negligent act or omission. While according to *Moll*, the "possible cause of action" standard requires less knowledge than a "likely cause of action standard," it still requires that the plaintiff possess at least some minimum level of information that, when viewed in its totality, suggests a nexus between the injury and the negligent act. In other words, the "possible cause of action" standard is not an "anything is possible" standard.

In the context of a delayed diagnosis, courts should maintain a flexible approach in applying the standard. In this regard, Justice BOYLE's partial concurrence in *Moll* is instructive:

> With the doctrine of reasonableness as a constant and the standard of due diligence as a guide, courts are able to determine when a plaintiff knew or should have known of an injury and its possible . . . cause, as well as whether there is a disputed issue of fact that requires jury resolution. Without a flexible approach, the purpose of adopting the discovery rule for latent injuries, as well as the procedural presumption favoring the nonmoving party on summary disposition, will be undermined.

\*     \*     \*

> As the court in *DuBose v Kansas City S R Co*, 729 F2d
> 1026, 1031 (CA 5, 1984), stated, whether a "plaintiff may be
> charged with awareness that his injury is connected to
> some cause should depend on factors including how many
> possible causes exist and whether medical advice suggests
> an erroneous causal connection or otherwise lays to rest a
> plaintiff's suspicion regarding what caused his injury." [*Moll*
> at 32-33 (BOYLE, J., concurring in part and dissenting in
> part).]

While Justice BOYLE's arguments for a flexible approach were aimed at refuting the majority's distinction between a "likely" and "possible" cause of action standard, her words nonetheless counsel wisely in applying the "possible cause of action" standard here.

In applying this flexible approach, courts should consider the totality of information available to the plaintiff, including his own observations of physical discomfort and appearance, his familiarity with the condition through past experience or otherwise, and his physician's explanations of possible causes or diagnoses of his condition.[4]

Here, even before the diagnosis was confirmed, Mrs. Solowy was aware that her symptoms were identical to those she experienced five years earlier. In

---

[4] Some of these factors are listed in the current medical malpractice discovery rule provision, MCL 600.5838a(2); MSA 27A.5838(1)(2), which provides in pertinent part:

> The burden of proving that the plaintiff, *as a result of physical discomfort, appearance, condition, or otherwise,* neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim is on the plaintiff. [Emphasis added.]

her own words, "it started all over again." Consequently, her observations of the discomfort and of the appearance and condition of her ear should have aroused some suspicion in her mind that the lesion might be cancer. These observations, coupled with Dr. Laing's explanation that the basal cell carcinoma could recur and that the lesion could be a recurrence of this cancer, supplied Mrs. Solowy with enough information to satisfy the standard.

We are also mindful of the enhanced responsibilities placed on medical malpractice plaintiffs by the 1986 medical malpractice tort reform legislation. See MCL 600.2912a *et seq.*; MSA 27A.2912(1) *et seq.* Specifically, the reforms require, among other things, that a plaintiff locate a medical expert who can review the medical records, determine that the claim has merit, and draft an affidavit of merit to submit with the complaint.[5] We realize that a case may arise where,

---

[5] The relevant provision currently provides:

(1) Subject to subsection (2), the plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:

(a) The applicable standard of practice or care.

(b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

(c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

perhaps because of a delay in diagnosis, a plaintiff will not be able to secure an affidavit of merit before the six-month period expires. In such a case, the plaintiff's attorney should seek the relief available in MCL 600.2912d(2);    MSA 27A.2912(4)(2),    which allows, upon a showing of good cause, an additional twenty-eight days to obtain the required affidavit of merit. During this period, the statute will be tolled and summary disposition motions on the ground of failure to state a claim should not be granted.[6]

These concerns are not present here. Mrs. Solowy could have secured her affidavit of merit and filed her claim well in advance of the cut-off period, even if she had waited for a definitive diagnosis from her physician. It must be remembered that the plaintiff only missed the cut-off period by approximately eight days. Had she decided to wait until her suspicions regarding her injury were confirmed, she still would have had approximately five months and eighteen days to locate an expert, obtain an affidavit of merit, and file suit.[7]

---

(2) Upon motion of a party for good cause shown, the court in which the complaint is filed may grant the plaintiff or, if the plaintiff is represented by an attorney, the plaintiff's attorney, an additional 28 days in which to file the affidavit required under subsection (1). [MCL 600.2912d;  MSA 27A.2912(4).]

[6] While the issue is not presently before us, we believe that good cause should be shown in this context by an expert's letter, indicating that a possible cause of the injury relates to the alleged negligent act or omission and that further time is required for testing in order to confirm the suspected cause.

[7] We also note that although the affidavit of merit requirement places an enhanced responsibility on plaintiffs, the notice requirement found at MCL 600.2912b;  MSA 27A.2912(2), in conjunction with the tolling provision found at MCL 600.5856(d);  MSA 27A.5856(d), generally operates to allow plaintiffs an additional 182 days to freely investigate their claim and

In summary, we caution that when the cause of a plaintiff's injury is difficult to determine because of a delay in diagnosis, the "possible cause of action" standard should be applied with a substantial degree of flexibility. In such a case, courts should be guided by the doctrine of reasonableness and the standard of due diligence and must consider the totality of information available to the plaintiff concerning the injury and its possible causes. While the standard should be applied with flexibility, it should nevertheless be maintained so that the legitimate legislative purposes behind the rather stringent medical malpractice limitation provisions are honored.

V

### DISPUTED FACTS

Finally, the plaintiff argues that dismissal of her complaint was improper because the question when she discovered or should have discovered the claim is a factual issue for the jury to resolve. However, in *Moll* at 26, this Court held that, "in the absence of disputed facts, the question whether a plaintiff's cause of action is barred by the statute of limitations is a question of law to be determined by the trial judge."

In this case, the plaintiff does not dispute that, as of her first visit to Dr. Laing, she was aware of a high possibility that the lesion on her ear was a recurrence of cancer. The plaintiff also does not dispute that, at this point, she was aware that her delay in seeking treatment was caused by the defendant doctors' alleged omissions. Consequently, the facts before the

---

find an expert. The six-month period is tolled during the 182-day notice period.

trial court relevant to the resolution of the discovery rule issue were undisputed. Simply put, no factual issues remained for the jury to decide.

Further, pursuant to the plain language of the medical malpractice discovery rule provision, the plaintiff bore the burden of coming forward with evidence to show a disputed issue of material fact on the discovery issue.

> The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition, or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim is on the plaintiff. [MCL 600.5838a(2); MSA 27A.5838(1)(2).][8]

The plaintiff failed to meet this burden. Rather than coming forward with evidence that she was unaware of a possible cause of action as of March 27, 1992, the plaintiff focused on the fact that, as of this date, there was a possibility that she did not have a cause of action because the lesion on her ear could possibly have been something other than cancer. This fact, undisputed by the defendants, does not support plaintiff's assertion that she could not have been aware of a possible cause of action.

---

[8] We note that the quoted provision reflects the 1986 amendments, which may or may not apply to this case. The previous discovery provision, however, also placed the burden of proof in this regard on the plaintiff. MCL 600.5838; MSA 27A.5838 applies to medical malpractice cases arising before October 1, 1986 (see n 3). This provision states in pertinent part:

> The burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. [MCL 600.5838(2); MSA 27A.5838(2).]

The plaintiff attempts to characterize the lower court determinations regarding the "possible cause of action" issue as an impermissible and disputed "factual inference" that was not supported by the evidence. However, calling it a factual inference does not make it one. Rather, the determination was a legal decision involving application of the undisputed facts to the "possible cause of action" standard. Merely because this legal determination might have been decided differently[9] does not change the nature of the inquiry from one of law to one of fact.

VI

CONCLUSION

The six-month discovery rule period begins to run in medical malpractice cases when the plaintiff, on the basis of objective facts, is aware of a possible cause of action. This occurs when the plaintiff is aware of an injury and a possible causal link between the injury and an act or omission of the physician. When the cause of the plaintiff's injury is difficult to determine because of a delay in diagnosis, the "possible cause of action" standard should be applied with a substantial degree of flexibility. In such cases, courts should be guided by the doctrine of reasonableness and the standard of due diligence, and must consider the totality of information available to the plaintiff concerning the injury and its possible causes.

---

[9] That is, the lower court might have decided that the plaintiff could not have been aware of a possible cause of action before obtaining a definitive diagnosis because the possibility that the cause of the lesion would prove to be cancer was too remote. We believe, however, that such a determination would have been erroneous.

Mrs. Solowy should have discovered a possible cause of action on March 27, 1992. As of this date, she was aware that her symptoms were identical to those she experienced five years earlier, and she had been advised by Dr. Laing that the lesion on her ear could be a recurrence of cancer. At this point, she was aware of an injury and a possible causal connection between the injury and the defendant doctors' alleged failure to warn her of the possibility of recurrence and of the necessity for follow-up visits. Because Mrs. Solowy waited more than six months after this date to file suit, her claim was properly barred.

Additionally, there is no merit to the plaintiff's argument that the issue whether she should have discovered a possible cause of action was a question of fact for the jury. When, as here, the facts relevant to the discovery rule issue are undisputed, the issue is proper for summary disposition.

Accordingly, we affirm the Court of Appeals decision.

BRICKLEY, CAVANAGH, BOYLE, RILEY, and WEAVER, JJ., concurred with MALLETT, C.J.

KELLY, J., took no part in the decision of this case.