# STATE OF MICHIGAN

# COURT OF APPEALS

PASQUALE SCIORTINO and KAREN
SCIORTINO,

        Plaintiffs-Appellants,

v

CHRISTOPHER NAJARIAN, D.O., DR. BLAKE
MILLER, CHRISTOPHER B. NAJARIAN, D.O.,
P.C., and ST. JOHN MACOMB-OAKLAND
HOSPITAL,

        Defendants-Appellees,
and

MARK ALLEN, D.O., and ST. JOHN
PROVIDENCE HEALTH SYSTEM,

        Defendants.

UNPUBLISHED
August 29, 2017

No. 331892
Oakland Circuit Court
LC No. 2014-143756-NH

Before: FORT HOOD, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. *(dissenting)*.

      I respectfully dissent. I believe that defendants' own conduct precludes any possibility that an ordinary layperson should have been aware of plaintiff's cause of action prior to Dr. Shapiro's actual aborted corrective surgery, and none of Dr. Feldman's commentary until that time clearly constitutes anything more than personal opinion about a surgical procedure that failed to provide its initially hoped-for outcome. Plaintiff's April 28, 2014 notice of intent requires that he discovered or should have discovered his cause of action no earlier than October 28, 2013. I find that the earliest plaintiff could have done so was December 11, 2013, when Dr. Shapiro attempted to perform a second surgery. I would therefore reverse the trial court's grant of summary disposition.

      Our Supreme Court has held that "[o]nce a plaintiff is aware of an injury and its possible cause, the plaintiff is equipped with the necessary knowledge to preserve and diligently pursue his claim." *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 223; 561 NW2d 843 (1997). It is common knowledge that the outcome of any given surgical procedure will not always be

everything for which one might hope. Awareness of a sub-optimal outcome, or that a procedure did not prove helpful, is not the same as awareness of an *injury*. This Court has explained that the diligence standard turns on knowledge attributable to an ordinary layperson rather than a doctor or lawyer, and requires more than a mere possibility that such a person would be theoretically capable of discovering the injury. *Jendrusina v Mishra*, 316 Mich App 621, 626, 631; 892 NW2d 423 (2016).

Critically, the "physician's explanations of possible causes or diagnoses of [the] condition" were clearly obfuscating in manner and would lead any reasonable layperson to conclude that it would be impossible to determine whether an injury had occurred. See *Solowy*, 454 Mich at 226-227. Any contention that plaintiff should have been aware that he had a cause of action immediately after the surgery is dispelled by defendants' instructions to plaintiff that recovery from the procedure would take time and that he should engage in physical therapy. Defendants' admonition that the procedure was not guaranteed to help him is clearly information upon which an ordinary layperson is objectively reasonable in relying upon. Another doctor's remark that Dr. Najarian had "messed up" is simply too vague to mean anything and could easily mean nothing more than a failure to achieve all that should have been achieved. Failure to successfully fix the original problem, coupled with a doctor's cautionary statement that it may take some considerable time to see results that may in fact never materialize, simply is not the same as awareness that an actual destructive error occurred. Trying again with a different doctor is likewise not the same as awareness that the first doctor affirmatively caused harm.

Again, the "discovery rule" requires a plaintiff to become aware, or requires that a plaintiff should become "aware of an *injury* and a possible causal link between the *injury* and an act or omission of the physician." *Solowy*, 454 Mich at 232 (emphasis added). Significantly, MCL 600.5838a(2) expressly requires that a plaintiff "*should* have discovered the existence of the claim," not that a plaintiff *could* have. See *Jendrusina*, 316 Mich App at 624. Plaintiff was clearly aware that the surgical procedure did not accomplish what he had anticipated. However, it is clearly contrary to both the plain language and the plain spirit of the statute to require patients to immediately assume and begin looking for an injury merely because they find an outcome disappointing.

Even *if* plaintiff's commentary about desiring to "fix" what Dr. Najarian had "messed up" could be reasonably construed as an understanding that Dr. Najarian had caused him an injury, it must be considered along with *all* of the evidence and it is the only piece of evidence on which defendants rely. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The December 14, 2011 operative report is deliberately deceptive, and there is at a very minimum a genuine question of material fact as to what Dr. Najarian communicated to plaintiff or his family. A party "is entitled to the benefit of testimony in support of a verdict in his favor despite his expression of an opinion inconsistent therewith." *Ortega v Lenderink*, 382 Mich 218, 223; 169 NW2d 470 (1969).

It is certainly conceivable that plaintiff *could* have determined that he had been injured shortly after the surgery, had he immediately assumed that defendants had made a critical and damaging error and lied about it, and thus immediately sought another doctor to open the surgical site back up to check. Such a response, particularly in the fact of assurances that recovery would not be swift, is patently ridiculous. It was not until Dr. Shapiro informed

plaintiff that he could not fix the problem that plaintiff *should* have become aware that actual malpractice might have occurred.  At the very least, a genuine question of fact exists whether plaintiff should have known he had a cause of action at any point in time in-between.

I would reverse.

/s/ Amy Ronayne Krause