*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KARRI BAASE and NICHOLAS BAASE,

Plaintiffs-Appellants,

v

EAST MICHIGAN PHYSICIANS
ORGANIZATIONS, PLC, and MARK C.
STEWART, M.D.,

Defendants-Appellees.

UNPUBLISHED
December 18, 2025
1:34 PM

No. 372734
Bay Circuit Court
LC No. 23-003214-NH

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Plaintiff Karri Baase[1] suffered knee pain for many years and underwent several knee surgeries. In April 2020, defendant Dr. Mark C. Stewart performed surgery on Baase's left knee because of a partial anterior cruciate ligament (ACL) tear. In September 2020, Dr. Stewart performed a partial knee replacement of the same knee. Baase continued to experience knee pain after the surgeries and ultimately consulted with Dr. Robert J. Ference, who informed her that both her ACL anchor button and her partial knee replacement were in the wrong locations. Baase filed this medical-malpractice action against Dr. Stewart and defendant East Michigan Physicians Organizations, PLC (EMPO), among other entities.[2] The trial court granted Dr. Stewart's renewed motion for summary disposition under MCR 2.116(C)(7) and (10) on statute-of-limitations grounds. The question presented in this appeal is whether the trial court properly concluded that there exists no material factual dispute that Baase was aware of a possible claim against Dr. Stewart

---

[1] Because plaintiff Nicholas Baase's claims are merely derivative of Karri Baase's claims, our reference to "Baase" refers to Karri Baase.

[2] Baase stipulated to the dismissal of defendants Great Lakes Physicians Organization, PC, and McLaren Bay Region, leaving Dr. Stewart and EMPO as the only defendants participating in this appeal.

on March 31, 2022, making her complaint untimely. Because the evidence fails to establish a genuine issue of material fact that Baase had knowledge of her claim on that date, we affirm.

## I. FACTS AND PROCEEDINGS

Baase has a history of knee surgeries beginning in 2007. She first treated with Dr. Stewart, an orthopedic surgeon, in December 2019 because her left knee was unstable, and she had difficulty walking. An MRI revealed a partial tear of her left ACL. Dr. Stewart recommended a total knee replacement, but Baase instead opted for ACL surgery, which Dr. Stewart performed on April 29, 2020. After the surgery, Dr. Stewart told Baase she would eventually need at least a partial knee replacement. Less than one month after the surgery, Baase heard her left knee "pop" and felt a sharp pain in her knee. At some point, her knee also "gave out." She treated with Dr. Stewart again on May 27, 2020, and June 9, 2020. Meanwhile, she went to physical therapy to rehabilitate her knee.

As she healed from her ACL surgery, Baase began to experience inner-knee pain. In June and July 2020, Baase and Dr. Stewart began discussing partial knee-replacement surgery, which Dr. Stewart performed on September 16, 2020. After the surgery, Baase again went to physical therapy. She also experienced burning and swelling at her incision site and felt "clicking" of her knee implant. In addition, she could feel the implant move, which caused knee pain every time she took a step. She continued with physical therapy through December 2020.

Baase continued to treat with Dr. Stewart for various issues until April 2022. In November 2021, he performed surgery for a torn meniscus in Baase's left knee, and in April 2021 he removed a lipoma from her left leg. In February 2022, he performed two additional surgical procedures on Baase's left leg below her knee due to an infection. As of March 2022, Baase's left knee still did not "feel right," and she continued to experience knee pain. She decided to consult Dr. Ference for a second opinion because of her continued pain and instability. She did not believe at that time that Dr. Stewart had performed her knee surgeries incorrectly, but she "felt like he couldn't get it right" and that he perhaps "didn't know how to help [her]."

Baase's first visit with Dr. Ference occurred on March 31, 2022. When asked what she recalled about that visit, Baase testified:

> I know he took x-rays, and when he saw the x-rays he told me that the ACL anchor button was in the wrong place and it didn't make sense why it was where it was. And then he went on to say that he thought the partial was in the wrong place and he didn't know why it was where it was.
>
> He was going to do a revision surgery but I don't think we talked about it at that visit.

Dr. Ference's record of Baase's March 31, 2022 visit, however, does not indicate that her ACL anchor button was in the wrong place or that her partial knee replacement was in the wrong place. Instead, the record states, "The left knee reveals a well-fixed medial partial knee replacement." The record further states:

IMPRESSION:

l. Status post medial MAKO[3] with instability.

2. Status post ACL with infection.

PLAN: I informed her today that she should not wear a brace as it could irritate the medial tibial incision. I instructed her in wound care. I told her to finish her antibiotics.[4] . . . In addition, I did send her to [physical] therapy.

Baase's second visit with Dr. Ference occurred on May 12, 2022. Dr. Ference's record of that visit indicates Baase's status as "post ACL reconstruction which failed" and "post partial medial knee arthroplasty." The record states Dr. Ference's impression as "[f]ailed left ACL reconstruction, status post partial medial knee arthroplasty" and indicates that he would perform "a revision ACL reconstruction." Baase underwent surgery with Dr. Ference on June 20, 2022.

On September 28, 2022, Baase sent her notice of intent to file a claim, and, on April 3, 2023, Baase filed her complaint against Dr. Stewart and EMPO. Baase's claim against EMPO was based on a vicarious liability theory that Dr. Stewart acted as EMPO's agent or employee. Dr. Stewart moved for summary disposition under MCR 2.116(C)(7) and (10), arguing that because Baase failed to file her complaint within the two-year limitations period for medical-malpractice actions, she was required to rely on the "discovery rule" set forth in MCL 600.5838a(2). He maintained that Baase discovered her claim, at the latest, on March 31, 2022, during her first appointment with Dr. Ference when Dr. Ference told her that Dr. Stewart purportedly positioned her ACL anchor button and partial knee replacement in the wrong locations. Dr. Stewart asserted that the six-month discovery rule limitations period expired on March 31, 2023, allowing for tolling of 182 days following Baase's notice of intent, and Baase untimely filed her complaint on April 3, 2023, three days late.

Baase opposed Dr. Stewart's motion, arguing that she did not discover her claim until her second appointment with Dr. Ference on May 12, 2022. She relied on Dr. Ference's medical records, which indicated, on March 31, 2022, that x-rays revealed "a well-fixed medial partial knee replacement." She maintained that she was not aware of her claim until May 12, 2022, when Dr. Ference informed her of her failed ACL reconstruction.

During oral argument on Dr. Stewart's motion, Baase's attorney asserted that Baase was likely confused during her deposition regarding what Dr. Ference told her on March 31, 2022, because Dr. Ference's medical record dated March 31, 2022, failed to indicate that Dr. Stewart had done anything incorrectly. Counsel maintained that testimony from Dr. Ference may shed

---

[3] The lower court record often references Baase's partial knee-replacement surgery as her "MAKO" surgery. "Mako robotic-arm assisted orthopedic surgery" is a form of surgery that may be used for partial and total knee replacements. Mayo Clinic, Orthopedic Surgery <https://www.mayoclinic.org/departments-centers/robotic-orthopedic-surgery/overview/ovc-20472153> (accessed November 18, 2025).

[4] Baase was still taking antibiotics because of her leg infection that resulted in Dr. Stewart's surgical procedures performed in February 2022.

light on what he and Baase discussed at her first visit on March 31, 2022. The trial court denied the motion without prejudice on the basis that there existed a question of fact regarding when "a reasonable person would have discovered that the continuing pain was due to medical malpractice." The court added, "It could possibly be cleared up with the deposition of Doctor Ference."

Thereafter, Dr. Stewart filed a renewed motion for summary disposition. He included as exhibits to his motion Baase's physical therapy records, indicating that Dr. Ference referred Baase to physical therapy on March 31, 2022, because of a "failed left ACL reconstruction." The records also showed that at her initial physical therapy examination, Baase reported that her ACL reconstruction failed, and she required a revision of both her ACL reconstruction and her partial knee replacement.

Baase opposed the motion, arguing that a failed ACL reconstruction was not necessarily indicative of malpractice and that, as of March 31, 2022, she did not know why the ACL repair failed. She asserted that she previously experienced several failed surgeries and still suffered knee pain. The fact that her more recent surgeries failed was no different from her previous unsuccessful surgeries, and Dr. Stewart warned her that she might require additional surgeries and treatment. In fact, Dr. Stewart treated Baase on April 21, 2022, and took x-rays that showed "good position of her left knee hemiarthroplasty." Dr. Stewart's notes also indicated that Baase was "doing well," and he testified that he could not have performed the partial knee replacement if the ACL repair had failed. Further, a CT scan of Baase's knee completed on October 13, 2021, showed "[u]nchanged positioning of the ACL reconstruction with the superior surgical button within the suprapatellar recess."

During oral argument on the renewed motion, Baase's attorney appeared to concede that Baase's claim was not based on the incorrect location of the partial knee replacement, but rather, involved only the failed ACL reconstruction. The trial court granted Dr. Stewart's motion, stating:

> I find that the plaintiff, based upon objective facts, the statement of Doctor Ference that the button was put in the wrong place by Doctor Stewart was [sic] aware of a possible cause of action at that time.
>
> The plaintiff became aware on March 31st, 2022, of an injury—failed operation. And she also became aware of a possible causal link between injury and the act or omission of the physician—the injury, the failed surgery, the act or omission putting the button in the wrong place.
>
> She was at that time equipped of [sic] the necessary knowledge the preserve [sic] and diligently pursue her claim, which she did not do because the claim then was due to be filed on March 31st, 2023, and was not filed until April 3rd, 2023, making it untimely filed.

The court entered an order granting Dr. Stewart's motion and dismissing Baase's claim against Dr. Stewart as well as her vicarious-liability claim against EMPO. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Kilian v TCF Nat'l Bank*, 343 Mich App 621, 630; 997 NW2d 745 (2022). Although Dr. Stewart moved for summary disposition under both MCR 2.116(C)(7) and (10), a motion for summary disposition on the basis that the statute of limitations bars a plaintiff's claim is properly brought under MCR 2.116(C)(7). *Compagner v Burch*, 347 Mich App 190, 198; 14 NW3d 794 (2023). In reviewing a motion under subrule (C)(7), we consider all the documentary evidence provided and accept the plaintiff's factual allegations in the complaint as true unless the evidence contradicts the allegations. *Id*. at 198-199. "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Hutchinson v Ingham Co Health Dep't*, 328 Mich App 108, 123; 935 NW2d 612 (2019) (quotation marks and citation omitted). "However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

The statutory limitations period for filing a medical-malpractice claim is two years from the date the claim accrued. MCL 600.5805(8); *Haksluoto v Mt Clemens Regional Med Ctr*, 500 Mich 304, 310; 901 NW2d 577 (2017). A medical-malpractice claim "accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." MCL 600.5838a(1). However, under the "discovery rule," a medical-malpractice action may be commenced "within 6 months after the plaintiff discovers or should have discovered the existence of the claim[.]" MCL 600.5838a(2); see also *Bowman v St John Hosp & Med Ctr*, 508 Mich 320, 330-331; 972 NW2d 812 (2021).

A plaintiff "should have discovered" her claim, within the meaning of MCL 600.5838a(2), when she "learned facts from which she could have inferred, without speculation or conjecture, that an earlier professional might have committed malpractice." *Id.* at 341. In other words, a plaintiff is aware of the existence of a claim when she has knowledge of a causal relationship between an injury and a doctor's conduct. *Id*. at 327. When the facts do not compel an inference regarding the possible cause of an injury, but do arouse suspicion, courts require that the plaintiff exercise diligence in investigating the injury's cause. *Id*. at 341-342. "[F]acts arouse suspicion when they make a plaintiff wonder whether the defendant is responsible." *Id*. at 342.

In *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 216; 561 NW2d 843 (1997), the plaintiff treated with the defendant physicians after discovering a lesion on her ear. The defendants diagnosed the lesion as cancerous and removed it. *Id*. Approximately five years later, the plaintiff discovered a similar lesion in nearly the same location. She consulted a dermatologist, who advised her that either the cancer had recurred or the lesion was noncancerous. The plaintiff underwent surgery to remove the cancer after a biopsy confirmed that the lesion was cancerous. *Id*. at 217. In determining whether the plaintiff's medical-malpractice action against the defendants was timely under the discovery rule, our Supreme Court opined that "[o]nce a plaintiff is aware of an injury and its possible cause, the plaintiff is equipped with the necessary knowledge to preserve and diligently pursue his claim." *Id*. at 223. The Court rejected the notion that a plaintiff must "be able to prove each element of the cause of action before the statute of limitations begins to run" and determined that the plaintiff was aware of her possible claim no later than her

first appointment with the dermatologist who informed her that the lesion could be a recurrence of cancer. *Id*. at 224.

In *Bowman*, 508 Mich at 328, the plaintiff's decedent discovered a breast lump and underwent a mammogram in June 2013. The defendant doctor interpreted the mammogram and advised her that the lump was a benign cyst, but a biopsy conducted in 2015 revealed that the lump was cancerous. She underwent a double mastectomy, which showed that the cancer had spread. In August 2016, she sought a second opinion from a physician who told her that the doctor may have misinterpreted the mammogram in 2013. *Id*. Our Supreme Court rejected the notion that the plaintiff's decedent should have inferred a causal relationship between her symptoms and the mammogram before June 2016 based only on her symptoms. *Id*. at 327, 345-348. Notably, the Court also rejected the notion that she should have second-guessed the professional judgment and expertise of the doctor who interpreted the mammogram. Rather, the Court recognized that a patient is entitled to rely on a doctor's opinion and advice. *Id*. at 347-348.

In the instant case, Baase argues that the date on which she should have discovered her claim against Dr. Stewart is a jury question, but she also maintains that she could not have discovered her claim before her second appointment with Dr. Ference on May 12, 2022. Dr. Stewart, on the other hand, argues that Baase should have known of a possible cause of action in early March 2022 and that she was aware of her claim, at the latest, on March 31, 2022. The record supports Dr. Stewart's argument that Baase was aware of her claim on March 31, 2022, when she first treated with Dr. Ference. Baase testified that she did not suspect that Dr. Stewart had done anything wrong until she treated with Dr. Ference. She decided to treat with Dr. Ference because she continued to experience knee pain and instability and thought that Dr. Stewart did not know how to help her but "didn't want to say it."

Similar to the plaintiff in *Solowy*, Baase became aware of her claim against Dr. Stewart when she sought a second opinion from Dr. Ference. When asked what occurred at her first appointment with Dr. Ference on March 31, 2022, Baase testified that he took x-rays and told her that her ACL anchor button was in the wrong place and her partial knee replacement was in the wrong place. He showed her on the x-rays what he was talking about and told her that he would perform a revision surgery. Although Baase argues that she must have gotten her dates confused, Dr. Ference's record dated March 31, 2022, indicates that he took x-rays on that date, although the record does not indicate that the ACL anchor button or the partial knee replacement were in the wrong locations. Admittedly, Dr. Ference's March 31, 2022, record does not comport with what Baase claimed he told her on that date.

However, Baase's physical therapy records corroborate her testimony. Dr. Ference's referral stated that he referred Baase to physical therapy because of a "failed left ACL reconstruction." At her initial physical therapy examination on April 20, 2022, Baase stated that Dr. Ference informed her that her ACL reconstruction failed, and she required an ACL reconstruction as well as a revision of her partial-knee-replacement surgery. Taken together, Baase's deposition testimony and physical therapy records indicate that she was aware on March 31, 2022, of her possible claim against Dr. Stewart. Although Baase contends she must have gotten her dates confused at her deposition, she fails to explain how she otherwise acquired the information she conveyed at her initial physical therapy examination on April 20, 2022. Baase asserts that if she believed that Dr. Stewart committed malpractice on March 31, 2022, it did not

make sense for her to treat with him again on April 21, 2022. Baase testified, however, that Dr. Stewart "discharged" her on that date and told her that she could discontinue the antibiotics. Therefore, there exists a plausible explanation for her visit with Dr. Stewart on April 21, 2022, notwithstanding her knowledge of her claim against him. Accordingly, because the record shows no genuine factual dispute that Baase had knowledge of her claim against Dr. Stewart on March 31, 2022, the trial court properly granted Dr. Stewart's renewed motion for summary disposition on the basis that Baase's claim was untimely filed.

Affirmed.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani