*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VERNON BOWMAN, Individually and as
Personal Representative of the ESTATE OF
KELLY M BOWMAN,

       Plaintiff-Appellee,

v

ST. JOHN HOSPITAL AND MEDICAL
CENTER and ASCENSION MEDICAL GROUP
MICHIGAN d/b/a ROMEO PLANK
DIAGNOSTIC CENTER,

       Defendants-Appellants,

and

TUSHAR S PARIKH MD,

       Defendant.

UNPUBLISHED
August 13, 2019

No. 341640
Macomb Circuit Court
LC No. 2017-002159-NH

VERNON BOWMAN, Individually and as
Personal Representative of the ESTATE OF
KELLY M BOWMAN,

       Plaintiff-Appellee,

v

ST. JOHN HOSPITAL AND MEDICAL
CENTER and ASCENSION MEDICAL GROUP
MICHIGAN d/b/a ROMEO PLANK
DIAGNOSTIC CENTER,

       Defendants,

No. 341663
Macomb Circuit Court
LC No. 2017-002159-NH

-1-

and

TUSHAR S PARIKH MD,

Defendant-Appellant.

Before: LETICA, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

In these consolidated interlocutory appeals, defendants appeal by leave granted the opinion and order of the trial court denying their motion for summary disposition under MCR 2.116(C)(7) (claim barred by statute of limitations).[1] We reverse and remand for entry of orders granting summary disposition in favor of defendants.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On June 12, 2013, plaintiff's decedent Kelly Bowman (Kelly) underwent a mammogram and an ultrasound because of a lump in her right breast. Defendant Dr. Tushar S. Parikh, M.D., interpreted the mammogram and opined that the lump was benign. Specifically, Dr. Parikh's diagnostic report stated:

> The breasts are heterogeneously dense. In the areas of dense fibroglandular tissue, non[-]calcified lesions might be obscured. No areas of architectural distortion or abnormal calcifications are seen. Subtle nodularity in the upper outer right breast is noted. Ultrasound was performed showing benign[-] appearing cysts. SUMMARY: Benign.[2]

Dr. Parikh recommended that Kelly undergo further mammograms on an annual basis. Her treating physician ordered another mammogram and ultrasound in 2014, noting that the mass was still present. Plaintiff raises no issues with regard to the 2014 mammogram, which did not result in a cancer diagnosis or order for further testing.

On April 21, 2015, Kelly underwent another mammogram and ultrasound, and reported that the lump had increased in size. A biopsy was performed on April 29, 2015. The biopsy report, based on a review of the April 21, 2015 mammogram and ultrasound, described Kelly's history as "[a]bnormal mammogram/ultrasound." The biopsy revealed that the lump was

---

[1] See *Bowman v St. John Hosp*, unpublished order of the Court of Appeals, entered May 18, 2018 (Docket No. 341640); *Bowman v St. John Hosp*, unpublished order of the Court of Appeals, entered May 18, 2018 (Docket No. 341663).

[2] We quote from Dr. Parikh's diagnostic report solely as factual background. We have no opinion, and express none, as to its accuracy, inaccuracy, or medical import.

cancerous. On May 18, 2015, Kelly underwent a bilateral mastectomy. Two cancerous tumors were removed, and a lymph node tested positive for cancer. A biopsy performed on July 28, 2016 revealed that the breast cancer had further metastasized to Kelly's bone marrow.

On December 10, 2016, Kelly's attorney served a notice of intent under MCL 600.2912b, giving notice of a claim of medical malpractice.[3] On June 12, 2017, Kelly and her husband filed this medical malpractice action against defendants.[4] Defendants moved for summary disposition under MCR 2.116(C)(7), arguing that Kelly had failed to file the complaint (or serve the notice of intent) before the statute of limitations expired. Defendants argued that there was no question that Kelly had failed to do so within the two-year period set forth in MCL 600.5805(6).[5] Thus, the only issue was whether Kelly timely initiated the action under MCL 600.5838a(2), which reads:

> Except as otherwise provided in this subsection, an action involving a claim based on medical malpractice may be commenced at any time within the applicable period . . . *or within 6 months after the plaintiff discovers or should have discovered the existence of the claim*, whichever is later. [MCL 600.5838a(2) (emphasis added).]

Defendants argued that Kelly should have discovered her claim no later than April 2015, when her cancer was diagnosed, and that she failed to file her complaint (or serve her notice of intent) within six months of that date.

In response, Kelly argued that she was unaware that Dr. Parikh had misinterpreted the 2013 mammogram until August 2016, when she treated with Dr. Dennis Citrin in Illinois. She asserted that Dr. Citrin reviewed her medical records and told her at that time that the 2013 mammogram had been misread and should have been interpreted as positive or suspicious for

---

[3] The service of a notice of intent tolls the running of the applicable statute of limitations. See MCL 600.5856(c); *Haksluoto v Mt Clemens Regional Med Ctr*, 500 Mich 304, 324; 901 NW2d 577 (2017). The notice of intent must "advise potential malpractice defendants of the basis of the claims against them" and "set forth allegations in good faith" that comply with the requirements of MCL 600.2912b. *Decker v Rochowiak*, 287 Mich App 666, 676; 791 NW2d 507 (2010) (citations omitted).

[4] The Complaint reflects medical malpractice claims on behalf of Kelly, and a derivative loss of consortium claim on behalf of her husband, plaintiff Vernon Bowman. Kelly is now deceased, and her husband is the personal representative of her estate.

[5] At the time, the statute of limitations for medical malpractice was found in MCL 600.5805(6). The current statute provides that limitations period in MCL 600.5805(8). See MCL 600.5805, prior to amendment and after amendment by 183 PA 2018 (effective June 12, 2018). The statutory language was not altered, and provides: "Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice." *Id.*

cancer.[6] Kelly argued that this case is directly on point with *Jendrusina v Mishra*, 316 Mich App 621; 892 NW2d 423 (2016).

The trial court denied the motions, opining that although a reasonable person could have concluded that a diagnosis of breast cancer in 2015 meant that Dr. Parikh had misread the 2013 mammogram, it could not say that a reasonable person *should* have reached that conclusion. The trial court further stated:

> There is no evidence before the Court that any of Kelly's treating physicians told her that her 2013 mammogram was suspicious for cancer until August of 2016, or that a 2015 cancer diagnosis should put a reasonable person on notice that a benign mammogram from 2013 was necessarily the result of a negligent misinterpretation.

These appeals followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). For the purposes of a motion under MCR 2.116(C)(7), we accept all well-pleaded factual allegations in the complaint as true. *Id*. at 119. If the facts are undisputed, "whether a plaintiff's action is barred by the statute of limitations is a question of law, to be determined by the trial judge." *Moll v Abbott Laboratories*, 444 Mich 1, 29; 506 NW2d 816 (1993). Likewise, "when the plaintiff should have discovered her claim is a question of law . . . [if] the facts relevant to determining the issue [are] undisputed." *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 216; 561 NW2d 843 (1997).

We review de novo issues of statutory interpretation. See *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

## III. ANALYSIS

Defendants argue that the trial court erred by concluding that the statute of limitations did not bar Kelly's claim. We agree.

The parties do not dispute that Kelly's claim was filed (and the notice of intent was served) beyond the two-year period of limitations for malpractice actions found in MCL 600.5805(8). However, this limitations period is subject to a six-month "discovery rule" exception, under which a claim may be commenced after the expiration of the two-year limitations period if it is commenced within six months after the plaintiff discovered or should have discovered the claim. MCL 600.5838a(2). The discovery rule does not require that the

---

[6] Like our dissenting colleague, we make no determination on the question of whether Dr. Parikh misread Kelly's 2013 mammogram by failing to interpret dense breast tissue and nodularity as suspicious for cancer.

plaintiff know with certainty that a defendant committed malpractice; rather, "the discovery rule period begins to run when, on the basis of objective facts, the plaintiff should have known of a possible cause of action." *Solowy*, 454 Mich at 222. In other words, "[o]nce a plaintiff is aware of an injury and its possible cause, the plaintiff is equipped with the necessary knowledge to preserve and diligently pursue" a claim for malpractice and the six-month period begins to run. *Id*. at 223. This is an objective standard based on whether a reasonable person should have discovered a possible claim. *Levinson v Trotsky*, 199 Mich App 110, 112; 500 NW2d 762 (1993). However, this objective standard is applied from the perspective of laypersons, not experts. *Jendrusina*, 316 Mich App at 631. The discovery rule applies to the discovery of an injury, rather than to a later realized consequence of the injury. *Moll*, 444 Mich at 18.

Here, plaintiff argues that the injury caused to Kelly by Dr. Parikh's alleged malpractice was a delay in her breast cancer diagnosis. In cases involving a delayed diagnosis, "courts should maintain a flexible approach" in applying the "possible cause of action" standard. *Solowy*, 454 Mich at 230. "In such a case, courts should be guided by the doctrine of reasonableness and the standard of due diligence and must consider the totality of information available to the plaintiff concerning the injury and its possible causes." *Id*. at 230. However, while a court should apply the standard with some flexibility, a court must keep in mind the "legitimate legislative purposes behind the rather stringent medical malpractice limitation provisions." *Id*. These purposes include "the Legislature's concern for finality" and for "encouraging a plaintiff to diligently pursue a cause of action." *Id*. at 222, quoting *Moll*, 444 Mich at 24.

Plaintiff argues that *Jendrusina* compels us to affirm the trial court's decision. We disagree. Indeed, we conclude that the circumstances of this case are closer to those presented in *Solowy* than to those presented in *Jendrusina*.

This Court recently addressed in detail the *Solowy* and *Jendrusina* decisions. See *Hutchinson v Ingham Co Health Dept*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 341249), slip op at ___. We will therefore only briefly address *Solowy* and *Jendrusina*. We further conclude that *Hutchinson* supports the outcome in this case.

In *Solowy*, as in this case, the plaintiff alleged a negligent failure to diagnose and treat cancer. The plaintiff treated with the defendant doctors because of a lesion on her left ear. *Id*., 454 Mich at 216. On October 9, 1986, following treatment, the doctors advised the plaintiff that the cancer was "gone" and that there was no chance of it returning. *Id*. at 216-217. In January 1992, the plaintiff noticed a similar lesion at approximately the same location on her ear and experienced the same symptoms that she had experienced previously. A doctor advised her that either the cancer had returned or the lesion was a benign tumor. A biopsy confirmed that the lesion was cancerous. The plaintiff underwent surgery on July 14, 1992, to remove the cancer. *Id*. at 217.

Our Supreme Court held in *Solowy* that the plaintiff became aware of a possible cause of action no later than March 27, 1992, when she was informed that the lesion was either cancerous or a benign tumor. *Id*. at 224. The Court further stated:

-5-

The "possible cause of action" standard does not require that the plaintiff know that the injury to her ear, in the form of the advancement of the disease process, was in fact or even likely caused by the defendant doctors' alleged omissions. Neither does the standard require that the plaintiff be aware of the full extent of her injury before the clock begins to run. Consequently, it is irrelevant that the plaintiff was not yet aware that the progression of cancer would eventually necessitate removal of the upper portion of her left outer ear. [*Id*. at 224-225.]

* * *

Here, even before the diagnosis was confirmed, [plaintiff] was aware that her symptoms were identical to those she experienced five years earlier. In her own words, "it started all over again." Consequently, her observations of the discomfort and of the appearance and condition of her ear should have aroused some suspicion in her mind that the lesion might be cancer. These observations, coupled with Dr. Laing's explanation that the basal cell carcinoma could recur and that the lesion could be a recurrence of this cancer, supplied [plaintiff] with enough information to satisfy the standard. [*Id*. at 227-228.]

By contrast, the plaintiff in *Jendrusina* presented to the hospital with flu-like symptoms. He was found to be dehydrated and to have suffered kidney failure, although he was unaware before the January 2011 hospital visit that he had kidney disease. He claimed that he did not become aware of his medical malpractice claim until September 20, 2012, when a nephrologist informed him that he should have been referred to a specialist earlier. *Jendrusina*, 316 Mich App at 625. This Court determined that the six-month discovery period commenced on September 20, 2012, and therefore held that the plaintiff had filed his case in a timely manner. *Id*. at 626-627. It further distinguished the circumstances before it with those of *Solowy*, stating:

As far as he knew, [the plaintiff] had no previous history of kidney disease and did not know of the lab reports showing that his kidney failure was the result of a slowly progressing condition rather than an acute event. In *Solowy,* the plaintiff knew that her doctor might have committed malpractice as soon as the tumor grew back; she was only waiting to learn whether she was in fact injured as a result of his actions. In this case, the opposite is true; after diagnosis in January 2011, plaintiff knew he was sick, but he lacked the relevant data about his worsening lab reports and the medical knowledge to know that his doctor might have committed malpractice. The critical difference between plaintiff in this case and the plaintiff in *Solowy* is that the plaintiff in *Solowy* neither required nor lacked special knowledge about the nature of the disease, its treatment, or its natural history. She knew exactly what her relevant medical history was at all times. She simply delayed pursuing her claim in order to wait for final confirmation of what she already knew was very likely true. Moreover, the *Solowy* plaintiff had visible symptoms that were clearly recognizable as a likely recurrence of her skin cancer long before the ultimate diagnosis. In this case, however, plaintiff's first recognizable symptom, i.e., urine retention, did not occur

until January 2011 when it precipitated his hospitalization. [*Id*. at 630-631 (footnote omitted).]

For all the reasons that this Court held that the plaintiff in *Jendrusina* should not have been aware of his possible claim, the opposite is true in this case.[7] Kelly at all times knew exactly what her medical history was. She knew of her breast lump, knew that it was in the same location as it was at the time of the 2013 mammogram, and knew that it had grown larger. She did not lack any relevant data about her condition. Although (unlike in *Solowy*), she had not previously been diagnosed with cancer, she was fully aware of her cancer diagnosis, was fully aware her breast cancer had metastasized, and had undergone a mastectomy, all more than six months before she served her notice of intent or filed her complaint. While the claim in *Solowy* was deemed untimely because the plaintiff had waited for confirmation of her suspicions (of cancer) before filing suit, Kelly in this case waited even longer. Indeed, she waited an additional 17+ months (after her cancer diagnosis) before serving her notice of intent.

Our conclusion is further supported by this Court's recent decision in *Hutchinson*. In that case, as here, the plaintiff alleged malpractice arising from the failure to properly diagnose breast cancer. Following the discovery of a lump in her left breast, a mammogram was performed on September 4, 2013. The defendants determined that there were "benign appearing calcifications" in both breasts. The plaintiff continued to perform her own monthly self-examinations, felt that the lump was growing, was concerned and therefore repeatedly complained about it to defendants, yet was consistently and repeatedly told that it was simply calcifications. In 2014, the plaintiff moved to Arkansas. A doctor there ordered another mammogram; it raised concerns about the possibility of cancer. On June 15, 2015, as a result of a follow-up biopsy, the plaintiff was diagnosed with breast cancer. The plaintiff filed a notice of intent, under MCL 600.2912b, on December 4, 2015.

The defendants principally argued in *Hutchinson* that the plaintiff should have discovered her cause of action in 2013 or 2014, as she continued to conduct her own breast self-examinations and continued to have concerns. Alternatively, the defendants argued that she should have discovered it, at the latest, when she was informed that she would need a biopsy (to determine whether the lump in her breast was cancerous) following her June 1, 2015 mammogram. This Court rejected both arguments, concluding that the plaintiff had reasonably relied in 2013 and 2014 on what she was being told by her healthcare providers. Moreover, because the plaintiff (unlike the plaintiff in *Solowy*) had never previously been diagnosed with breast cancer and had never previously had interactions with a medical professional concerning the possibility of cancer, she had not (as had the plaintiff in *Solowy*) waited to pursue her claim until she had "final confirmation of what she already knew was very likely true." *Hutchinson*, ___ Mich App at ___, slip op at __, (quoting *Jendrusina*, 316 Mich App at 631). The Court held that the plaintiff's action was not barred by the statute of limitations.

---

[7] The dissent suggests that we are not following *Jendrusina*. To the contrary, *Jendrusina* itself expounded on the distinguishing circumstances that compel a different outcome here.

-7-

Importantly, in reaching that conclusion, the Court in *Hutchinson* held that the date of the plaintiff's cancer diagnosis was the critical date for purposes of determining when she should have discovered her cause of action;[8]

> [W]e disagree with the trial court's legal conclusion that plaintiff was aware of an injury in the form of breast cancer, and any possible causation relating to the alleged medical malpractice of defendants, *before her definitive diagnosis of breast cancer. Solowy*, 454 Mich at 222, 224. Considering the information that was available to plaintiff at the time of her conversation with Dr. Frost, plaintiff did not know whether the lump was cancerous or not, and unlike the plaintiff in *Solowy*, she had not undergone a prior experience with cancer that would have informed her experience or made her familiar with a cancer diagnosis. *Id*. at 227. *It was not until June 15, 2015, when plaintiff received a definitive diagnosis of cancer, that plaintiff discovered, or should have discovered her possible cause of action, in that she became aware that she had breast cancer, and could have surmised that defendants were negligent in the treatment of the lump in her breast when she consulted with medical professionals at the Ingham County Health Department.* Given that her notice of intent was mailed on December 4, 2015, her cause of action was timely filed. [*Hutchinson*, ___ Mich App at ___, slip op at __, (emphasis added); See also *id*. at __ n 10 ("plaintiff did not, and should not, have discovered her possible cause of action until she received her diagnosis of breast cancer on June 15, 2015").]

That conclusion by the Court in *Hutchinson* is equally compelling in this case. Kelly was diagnosed with cancer on April 29, 2015. A bilateral mastectomy was performed on May 18, 2015. Two cancerous tumors were removed. A lymph node tested positive for cancer. Under *Hutchinson*, any of these events was sufficient to commence the running of the six-month discovery period. But Kelly did not serve her notice of intent until December 10, 2016 (and did not file suit until June 12, 2017).

---

[8] The dissent suggests, based on "the face of the [*Hutchinson*] opinion," that the Court in *Hutchinson* "apparently never considered or analyzed" that, contemporaneously with her cancer diagnosis, Ms. Hutchinson was informed by her treating physicians that the 2013 mammogram results should have prompted additional testing (which the dissent characterizes as "an express statement that the defendants might have committed malpractice"). However, and although the dissent suggests that this factor was somehow critical to the outcome in that case (which we note resulted in an opinion—to which one of us was signatory—in favor of Ms. Hutchinson in the circumstances of her appeal), it in fact played no role whatsoever in the analysis of the Court in *Hutchinson*. What was instead critical was the date of the cancer diagnosis. Indeed, it was Ms. Hutchinson's counsel – the very same counsel who represented plaintiff in this case – who argued that Ms. Hutchinson was not aware that she had been injured by having a delayed cancer diagnosis until "she *first became aware that she was diagnosed with breast cancer*." *Hutchinson*, ___ Mich App at ___, slip op at 11 (emphasis added).

When Kelly's lump was biopsied and she "received a definitive diagnosis of cancer," she, like the plaintiff in *Hutchinson*, "could have surmised that defendants were negligent in the treatment of the lump on her breast" at the time she had consulted with them. *Id*. at ___. At that point, she had sufficient information to trigger the running of the discovery rule period. *Solowy*, 454 Mich at 222, 224.[9] Because Kelly's notice of intent was served more than 6 months after April 29, 2015, the trial court erred by denying defendants' motions for summary disposition under MCR 2.116(C)(7). MCL 600.5805(8); MCL 600.5838a(2).[10]

Reversed and remanded for entry of orders granting summary disposition in favor of defendants. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Mark T. Boonstra

---

[9] It is apparent to us that plaintiff and our dissenting colleague effectively seek to conflate the terms "discovers" and "should have discovered," as set forth in MCL 600.5838a(2), so as to essentially read the latter (i.e., the discovery rule) out of existence. But this Court is not a super-legislature, and any such re-writing of the statute should take place in the Legislature, not in this Court. See, e.g., *Ferguson v Skrupa*, 372 US 726, 732; 83 S Ct 1028; 10 L Ed 2d 93 (1963) ("We refuse to sit as a 'superlegislature to weigh the wisdom of legislation.' ") (citation omitted); *O'Donnell v State Farm Mut Auto Ins Co*, 404 Mich 524, 543; 273 NW2d 829 (1979) ("[W]e do not sit "as a superlegislature to judge the wisdom or desirability of legislative policy determinations.") (citation and footnote omitted).

[10] We recognize that medical patients like Kelly and Ms. Hutchinson, who must divide their time and attention between the overwhelming task of fighting a deadly disease and pursuing a medical malpractice claim, will prioritize their survival ahead of filing a lawsuit. We certainly sympathize with a patient's plight in such a situation. Nevertheless, our duty requires us to apply the law no matter what may be divergent outcomes in different circumstances. See *Solowy,* 454 Mich at 225-226 (acknowledging that arbitrariness in applying the statute of limitations is unavoidable). And the law requires us to follow *Solowy*, *Jendrusina*, and *Hutchinson* and therefore to find this claim to be untimely. See *Paige v City of Sterling Heights*, 476 Mich 495, 524; 720 NW2d 219 (2006) ("all lower courts and tribunals are bound by" a prior decision of the Supreme Court "and must follow it even if they believe that it was wrongly decided or has become obsolete"); MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.").