*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MYLES ROBERTSON,

       Plaintiff-Appellant,

v

WILLIAM BEAUMONT HOSPITAL, doing business as BEAUMONT HOSPITAL ROYAL OAK, BEAUMONT HEALTH, doing business as BEAUMONT BOTSFORD OAKWOOD, INC., and KIMBERLY A. LES, M.D.,

       Defendants-Appellees.

UNPUBLISHED
May 26, 2022

No. 356923
Oakland Circuit Court
LC No. 2019-174111-NH

Before: BORRELLO, P.J., and SHAPIRO and HOOD, JJ.

PER CURIAM.

In this medical malpractice case, plaintiff appeals as of right the trial court's order granting summary disposition to defendants under MCR 2.116(C)(7) (statute of limitations) on the ground that plaintiff failed to bring his action within the six-month discovery period set forth in MCL 600.5838a(2). We affirm.

## I. BACKGROUND

In May 2013, plaintiff, then 19 years old, presented to Dr. Kimberly Les, M.D., with complaints of painful masses in his right hip and left shoulder. A biopsy showed chondrosarcoma, a form of bone cancer, in plaintiff's pelvis and shoulder. The shoulder tumor was removed with a resection obtaining "negative margins," and there were no recurrences of the shoulder cancer. Dr. Les resected the pelvis tumor on July 17, 2013. The pathology report showed "positive margins," meaning that the tumor was not completely excised. After this surgery plaintiff underwent monitoring of his right hip, including monthly x-rays. Beginning in January 2015, there were multiple recurrences and resections in plaintiff's right hip.

Plaintiff asserts that Dr. Les violated the relevant standard of care in several respects, including: (1) that she failed to adequately review and appreciate the pathology report showing that the July 2013 surgery did not obtain negative margins of the pelvic tumor; and (2) she failed

-1-

to fully inform plaintiff that the surgery did not obtain negative margins and to take the appropriate action such as reoperation.

There are no medical records documenting any discussion between Dr. Les and plaintiff regarding the results of the July 2013 surgery. And their testimonies regarding those conversations differ substantially. Plaintiff testified that Dr. Les told him that the July 2013 procedure "was successful. That she had removed the cancer." Dr. Les, however, testified that plaintiff was aware that this procedure did not obtain a "wide margin." Dr. Les also testified that after receiving the pathology report showing positive margins, she again recommended a hemipelvectomy surgery to plaintiff. An external hemipelvectomy involves removal of the pelvis and, in this case, amputation of plaintiff's right leg. Dr. Les testified that this procedure was necessary to "provide a true wide margin" of plaintiff's pelvic tumor and that "from the start" plaintiff "adamantly refused it." Plaintiff's deposition testimony indicates that Dr. Les presented amputation of his leg as a surgical option before the July 2013 surgery and that he declined it. He testified, "I made the decision I didn't want to try the amputation."

In January 2015, plaintiff reported a mass on his right hip, which was confirmed to be a recurrence of his chondrosarcoma. Dr. Les testified that she again recommended a hemipelvectomy but plaintiff declined and so she performed a surgical resection of the right hip mass instead. An MRI in May 2015 indicated a second recurrence of chondrosarcoma in plaintiff's right hip. Another resection was performed and the tumor was confirmed to be chondrosarcoma. Dr. Les performed five more resections over the course of 2016 and 2017 to treat plaintiff for recurrences of cancer in his right hip. Dr. Les characterized these resections as "debulkings," and indicated that they were done for palliative rather than curative purposes. Dr. Les testified that she continued to discuss with plaintiff that his tumor was going to keep recurring and that his best chance to lessen the chance of recurrence was a hemipelvectomy.

On May 11, 2018, plaintiff met with Dr. Geoffrey Siegel, M.D., at the University of Michigan for a second opinion on Dr. Les's recommendation of a hemipelvectomy. Dr. Siegel then consulted with the University of Michigan Tumor Board, who initially concurred with that recommendation. However, after new MRIs were obtained showing metastatic spread of cancer, the Board recommended against proceeding with the hemipelvectomy. In a June 7, 2018 phone call, Dr. Siegel informed plaintiff and his mother that he was now recommending against the procedure.

Plaintiff sent defendants a notice of intent, dated November 20, 2018, to file a medical malpractice action. The action itself was filed in May 2019.

After some discovery, defendants moved for summary disposition under MCR 2.116(C)(7). They argued that the action was untimely under the six-month discovery rule contained in MCL 600.5838a(2) because plaintiff discovered or should have discovered that he had "a possible cause of action," *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 221; 561 NW2d 843 (1997), against defendants when his cancered recurred in 2015. Alternatively, defendants argued that even if plaintiff did not discover his possible cause of action until his May 11, 2018 meeting with Dr. Siegel, he still failed to commence his action within six months of that date. In response, plaintiff and his mother attested in affidavits that they did not become aware until a June

2018 discussion with Dr. Siegel that Dr. Les had been "cutting around the tumor" and that a different and more involved operation should have been performed at an earlier time.

The trial court ordered that the parties complete the deposition of Dr. Siegel before it would rule on the motion for summary disposition. In a supplemental response after the deposition, plaintiff argued for the first time that the fraudulent-concealment exception contained in MCL 600.5838a(2) applied in this case. Specifically, plaintiff claimed that Dr. Les fraudulently concealed that negative margins were not obtained in the July 2013 surgery. The trial court issued an opinion and order in December 2020 granting summary disposition to defendants. The court determined that plaintiff's claim was time barred because he should have known that he had a possible cause of action against Dr. Les when his cancer first recurred in January 2015. The court declined to address the fraudulent-concealment argument on the ground that plaintiff failed to plead that claim. The court denied plaintiff's motion for reconsideration, and this appealed followed.

## II. ANALYSIS

### A. SIX-MONTH DISCOVERY PERIOD

Plaintiff first argues that the trial court erred by granting summary disposition to defendants because there were material questions of fact as to when the six-month discovery period commenced. We disagree.[1]

There is no dispute in this case that plaintiff did not comply with the two-year statute of limitations for medical malpractice actions. See MCL 600.5805(8); *Haksluoto v Mt Clemens*

---

[1] We review de novo a trial court's decision to grant summary disposition. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015). "Subrule (C)(7) permits summary disposition when the claim is barred by an applicable statute of limitations." *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court summarized the standards for analyzing a motion brought under that subrule:

> Under MCR 2.116(C)(7) . . . , this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

See also *Solowy*, 454 Mich at 230 ("[I]n the absence of disputed facts, the question whether a plaintiff's cause of action is barred by the statute of limitations is a question of law to be determined by the trial judge.") (quotation marks and citation omitted).

*Regoinal Med Ctr*, 500 Mich 304, 310; 901 NW2d 577 (2017). But a medical malpractice action brought beyond the two-year limitations period is nonetheless timely if it was commenced "within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later." MCL 600.5838a(2). The parties agree that the question before this Court is whether plaintiff should have discovered his cause of action before May 20, 2018, i.e., six months before he sent the notice of intent dated November 20, 2018.[2] If so, his claim is untimely under MCL 600.5838a(2).

In *Solowy*, 454 Mich 214, the Supreme Court adopted the "possible cause of action" standard to determine when a plaintiff should have discovered a claim for purposes of the six-month discovery rule. Under this standard, "[t]he six-month discovery rule period begins to run in medical malpractice cases when the plaintiff, on the basis of objective facts, is aware of a possible cause of action," which "occurs when the plaintiff is aware of an injury and a possible causal link between the injury and an act or omission of the physician." *Id*. at 232. "Once a plaintiff is aware of an injury and its possible cause, the plaintiff is equipped with the necessary knowledge to preserve and diligently pursue his claim." *Id*. at 223.

After the trial court granted summary disposition in this case, the Supreme Court decided *Bowman v St John Hosp & Med Ctr*, ___ Mich ___; ___ NW2d ___ (2021) (Docket Nos. 160291, 160292), which clarified the role of diligence in determining when the sixth-month discovery period begins to run. The Court explained that when "the facts compel an inference of an injury's possible cause, diligence has little role to play in evaluating whether a plaintiff should have discovered a possible cause of action." *Id*. at __; slip op at 15. But "when the facts don't compel an inference of a possible cause but do arouse suspicion, we require diligence." *Id*. To determine whether the facts should have aroused suspicion, courts apply "a flexible, fact-specific inquiry, fueled by common sense and reason." *Id*. at ___; slip op at 16 (quotation marks and citation omitted). "[F]acts arouse suspicion when they make a plaintiff wonder whether the defendant is responsible." *Id*.

In granting defendants' motion for summary disposition, the trial court determined that this case was analogous to *Solowy*, 454 Mich 214. In that case, Ms. Solowy had a cancerous lesion removed from her left ear, and one of her treating doctors "assured her during the course of her treatment that the cancer was 'gone' and that there was no chance of it recurring." *Id*. at 216-217. About five years later, she "discovered a similar lesion on her left ear at approximately the same site" and experienced nearly identical symptoms that she experienced with the prior lesion. *Id*. at 217. Two months later, on March 27, 1992, she visited a dermatologist who advised her that the lesion was either cancerous or benign. *Id*. On April 9, the dermatologist informed Ms. Solowy that the biopsy showed that the lesion was a recurrence of cancer. *Id*.

The Supreme Court held that the six-month discovery period commenced on March 27, rather than April 9, which rendered Ms. Solowy's medical malpractice action untimely. *Id*. at 233. The Court reasoned that on March 27 "the plaintiff knew of an injury, i.e., the progression of the lesion on her ear, and its possible cause, i.e., the failure of [her doctors] to inform her that the

---

[2] The filing of the notice of intent tolls the limitations period for medical malpractice actions. *Haksluoto*, 500 Mich at 307.

-4-

cancer could recur and that she should seek follow-up treatment." *Id*. at 224. In *Bowman*, the Supreme Court reaffirmed that holding, explaining Ms. Solowy learned information on March 27 that contradicted what she was told in 1986, "i.e., that 'there was no chance of [the cancer] recurring,' and so Ms. Solowy had enough information at her disposal to know that her former doctors might have committed malpractice." *Bowman*, ___ Mich at ___; slip op at 13. Stated differently, Ms. Solowy "could have inferred the possibility of medical malpractice when the dermatologist's statements directly contradicted those she'd received from her former doctors." *Id*. at ___; slip op at 15.

In this case, plaintiff was aware of an "injury" when he learned in January 2015, and multiple times thereafter, that his cancer had recurred. The injury in this case is much clearer than *Solowy*, where the Court held that Ms. Solowy suffered an injury before it was even confirmed that her lesion was cancerous. In contrast, plaintiff here knew of an actual injury, as opposed to possible injury, in January 2015 and on all the subsequent dates that he was diagnosed with a recurrence of cancer.

The next question is whether plaintiff should have inferred medical malpractice from this injury. On this aspect, this case is substantially similar to *Solowy*. Plaintiff testified that Dr. Les told him "[t]hat she had removed the cancer" in the July 2013 surgery, and that he "should not get cancer again." As in *Soloway*, the subsequent recurrence of cancer in January 2015 directly contradicted Dr. Les's alleged statements. Thus, plaintiff should have inferred from the recurrence of cancer that Dr. Les might have committed malpractice. More specifically, the recurrence less than a year-and-a-half after the initial surgery compelled the inference that Dr. Les failed to completely resect the tumor as she had claimed. The facts of this case are even stronger for the defense than *Solowy* because defendants do not argue that plaintiff should have discovered a cause of action before it was confirmed that his cancer had recurred in January 2015.[3]

Because the recurrence directly contradicted what Dr. Les allegedly told plaintiff following the July 2013 surgery, he should have inferred a possible causal link between the injury and a negligent act or omission by Dr. Les. The trial court correctly analogized this case to *Solowy*, which according to *Bowman* is the type of case where diligence plays a minimal role because the

---

[3] *Solowy* observed that flexibility to the "possible cause of action" standard is warranted in "delayed diagnosis" cases, but nonetheless concluded that, given Ms. Solowy's prior experience with cancer, "her observations of the discomfort and of the appearance and condition of her ear should have aroused some suspicion in her mind that the lesion might be cancer." *Solowy*, 454 Mich at 227-228. Here, defendants rely on plaintiff's reoccurring symptoms and family history of bone cancer to argue that he should have discovered a possible action. However, this is a not a "delayed diagnosis" case like *Solowy*, where the question is essentially whether the plaintiff should have been aware of or anticipated his or her diagnosis before it was confirmed. Rather, it is inconsequential if the six-month discovery period commenced when plaintiff's symptoms first reappeared or when the biopsy confirmed that his right hip mass was a recurrence of cancer. Accordingly, we do not view plaintiff's prior experience with bone cancer as being relevant in this case.

facts compel an inference of the injury's possible cause. See *Bowman*, ___ Mich at ___; slip op at 15. Plaintiff argues that this Court should reverse the trial court on the basis of *Bowman*, which reiterated that a plaintiff may rely on a doctor's medical advice and is not required to second-guess a doctor's decisions and expertise. See *id*. at ___; slip op at 16-17, 21. From this, plaintiff argues that he was entitled to accept Dr. Les's assessment that the cancer was removed by the July 2013 surgery until he learned contradicting information from Dr. Siegel in 2018. But although a plaintiff may rely on their doctor's advice, *Bowman* was clear that there comes a point where the facts arouse suspicion and "trigger [the] duty to investigate . . . ." *Id*. at ___; slip op at 16. And here, plaintiff received repeated contradicting information from his recurrences that occurred well before he met with Dr. Siegel. Thus, we conclude that no reasonable juror could find that there was not a basis to become suspicious or that plaintiff thereafter exercised reasonable diligence to determine if he had a cause of action against Dr. Les.[4]

Plaintiff points out that there is a factual dispute as to what Dr. Les told plaintiff following the July 2013 surgery. But for purposes of a subrule (C)(7) motion, plaintiff's version of events is accepted as true. See *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008). Accepting plaintiff's testimony regarding Dr. Les's statements as true, and considering the undisputed timeline of the recurrences, there was no material factual dispute precluding the trial court from deciding as a matter of law when the discovery period commenced. See *Solowy*, 454 Mich at 230-231 (holding that the trial court correctly decided the commencement of the discovery period as a matter of law when "the facts before the trial court *relevant to the resolution of the discovery rule issue* were undisputed.") (emphasis added).

In sum, plaintiff should have discovered a possible cause of action in January 2015, or at least well before his meeting with Dr. Siegel, because the recurrence of cancer was directly inconsistent with Dr. Les's alleged statements following the July 2013 surgery that the cancer had been removed and should not return. Alternatively, the recurrences were sufficient to arouse plaintiff's suspicion and he failed to exercise reasonable diligence to discover a possible cause of action. Accordingly, the trial court correctly granted defendant's motion for summary disposition as it pertained to six-month discovery rule.[5]

---

[4] The facts of *Bowman* are also distinguishable from the instant case. In *Bowman*, the Court declined to hold on the limited record before it that the plaintiff should have known that a 2013 mammogram was misread on the basis of her cancer diagnosis in 2015 because doing so would have required imputing medical knowledge to the plaintiff, i.e., that a benign breast lump in 2013 could not reconciled with a malignant breast lump in 2015. See *Bowman*, ___ Mich at ___; slip op at 19. In this case and in *Soloway*, however, the recurrence of cancer directly contracted the doctor's prior statements that the cancer had been removed and would not return. Medical knowledge is not required to infer a possible cause action under those circumstances.

[5] Because we agree with the trial court that the six-month discovery period began in January 2015, we need not address the parties' arguments regarding the alternative discovery date arising from Dr. Siegel's alleged statements to plaintiff in 2018.

## B. FRAUDULENT CONCEALMENT

Plaintiff also argues that the trial court should have allowed him the opportunity to amend the complaint include a claim for fraudulent concealment. We disagree because any such amendment would be futile.[6]

MCL 600.5838a(2)(a) provides that the "period of limitations set forth in subsection (3)" apply "[i]f discovery of the existence of the claim was prevented by the fraudulent conduct of the health care professional against whom the claim is made . . . or of the health facility against whom the claim is made . . . ." For this provision to apply, "the plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment," and "must prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery." *Sills v Oakland Gen Hosp*, 220 Mich App 303, 310; 559 NW2d 348 (1996).

On appeal, plaintiff requests the opportunity to amend the complaint to include a fraudulent-concealment claim but does not address the substance or merits of that claim. Before the trial court, plaintiff argued that Dr. Les fraudulently concealed the fact that negative margins were not obtained in the original surgery and continuously thereafter. After the trial court rejected this claim on the basis that plaintiff failed to plead it, plaintiff argued in his motion for reconsideration that he had pleaded facts constituting fraudulent concealment, pointing to the allegation in the complaint that Dr. Les failed to provide full and informed consent to plaintiff and his family regarding her failure to obtain negative margins.

To maintain a claim of fraudulent concealment, plaintiff must allege that Dr. Les made a misrepresentation that was designed to prevent discovery of the medical malpractice claim. But the factual allegations in the complaint do not amount to a claim that Dr. Les *intentionally* concealed the results of the July 2013 surgery from plaintiff and his family. To the contrary, the complaint alleges that Dr. Les was *negligent* by failing "to fully appreciate the surgical pathology report results . . . and inform Mr. Robertson and his family that negative and/or clear margins had not been obtained." In other words, the complaint does not allege that Dr. Les knew she did not obtain negative margins and then intentionally misrepresented to plaintiff that she had. Rather, the complaint alleges that Dr. Les failed to realize that she did not obtain negative margins. Thus, while plaintiff tries to bootstrap a fraudulent-concealment claim to the underlying medical malpractice claim, the latter alleges only negligence, not fraud.

This case is somewhat similar to *Sills*, where the plaintiff alleged that her doctor failed to warn her of the risks of steroids and misdiagnosed her condition. *Sills*, 220 Mich App at 306. The plaintiff also alleged fraudulent concealment on these grounds, i.e., "that defendants prevented her from discovering the existence of her claim by failing to inform her of the risk of steroids" and

---

[6] We review a trial court's ruling regarding a motion to amend for an abuse of discretion. *Wolfenbarger v Wright*, 336 Mich App 1, 14; 969 NW2d 518 (2021). "A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes." *Id.*

misrepresented her condition. *Id*. at 309. This Court concluded that these allegations did not show fraudulent concealment:

> In her complaint, plaintiff did not claim that defendants affirmatively acted or made misrepresentations to prevent her from discovering the alleged malpractice. Although plaintiff claimed that defendants failed to inform her of the risks of steroids, *that allegation was part of her general claim of malpractice, not a claim of fraud*. While [the doctor] may have misdiagnosed plaintiff's condition, plaintiff did not show that he acted fraudulently to conceal her potential cause of action. A misdiagnosis is not an affirmative act to conceal a claim. Plaintiff has not sufficiently asserted that defendants committed fraudulent conduct so as to toll the statute of limitation. [*Id*. at 310 (emphasis added.]

Similar to *Sills*, plaintiff is merely repeating his medical malpractice allegations in an attempt to show fraudulent concealment. But those allegations do not claim that Dr. Les made affirmative acts or representations designed to prevent plaintiff from discovering the alleged malpractice. A litigant may engage in alternative pleading, but here plaintiff has not expressly pleaded or argued that Dr. Les intentionally misrepresented the pathology report of the July 2013 surgery. In the absence of such a claim, plaintiff's fraudulent-concealment claim is legally insufficient on its face and therefore amendment of the complaint would be futile. See *Hakari v Ski Brule, Inc*, 230 Mich App 352, 355; 584 NW2d 345 (1998) ("An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face.") (quotation marks and citation omitted).

Affirmed.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Noah P. Hood